# Exhibit A

**L.S.**

## Commonwealth of Massachusetts

BRISTOL, ss.

Jonathan Souza
on his own behalf
and on behalf of
all others similarly situated, PLAINTIFF(S),

v.

South Coast Health System DEFENDANT(S)

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2273CV0496A

A TRUE ATTESTED COPY

8/23/22

BRISTOL COUNTY DEPUTY SHERIFF

### SUMMONS

THIS SUMMONS IS DIRECTED TO South Coast Health System, Inc. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Bristol Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or Plaintiff, if unrepresented). You can do this by:

a. Filing or mailing a **signed original** Answer with the Clerk's Office for Civil Business, Bristol County Superior Court, 441 County St. 1st Floor, New Bedford, MA 02740 (address), by mail or in person, **AND**

b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following: Ryan P. McLane address: 269 South Westfield St. Feeding Hills, MA 01030

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons list under **Mass.R.Civ.P. 12.** If you are filing the Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at **www.mass.gov.courts/case-legal-res/rulesofcourt.**

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

#2

## COMMONWEALTH OF MASSACHUSETTS
## BRISTOL SUPERIOR COURT

BRISTOL, SS SUPERIOR COURT
FILED

JUL 1 8 2022

Bristol, SS.

| | |
|---|---|
| JONATHAN SOUZA, on his own behalf and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) |
| SOUTHCOAST HEALTH SYSTEM, INC., | ) ) |
| Defendant | ) ) |

No.: 2273CV 00496A

## CLASS ACTION COMPLAINT

### PARTIES

1. Jonathan Souza is an individual who resides in Fall River, Bristol County, Massachusetts. He was employed by Southcoast Health System, Inc., working as a Registered Nurse at Southcoast's Fall River location.

2. Defendant Southcoast Health System, Inc., is a nonprofit corporation, operating hospitals throughout southeastern Massachusetts and Rhode Island, with a principal office of 101 Page Street in New Bedford, Massachusetts.

### JURISDICTION AND VENUE

3. This is a class action lawsuit against the Defendant for religious discrimination under Title VII of the Civil Rights Act and G.L. c. 151B.

4. Plaintiff resides in Bristol County and defendant's principal office is located in Bristol County, therefore venue is proper in accordance with G.L. c. 223 § 1.

1

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

5. Plaintiff has obtained a "Notice of Right to Sue" from the U.S. Equal Employment Opportunity Commission, which allows this Court jurisdiction over the Religious Discrimination claims.

## STATEMENT OF FACTS

6. In mid-July of 2021, defendant announced a mandatory COVID-19 vaccination policy wherein all Southcoast employees were required to be fully vaccinated against COVID-19.

7. Employees who did not receive either two Pfizer or Moderna, or one Johnson & Johnson vaccine by November 15 of 2021, and who did not receive an approved medical or religious exemption would be considered "involuntarily terminated for failure to comply with this important Southcoast Health policy."

8. Defendant, in a letter to its employees dated October 4, 2021, stated that medical and religious exemptions would be granted "only in limited circumstances." (Exhibit A).

9. Plaintiff and numerous other employees submitted requests for religious accommodation to the defendant using the defendant's online "service portal" for vaccine exemptions, detailing his sincerely held religious beliefs that preclude them from taking any of the three available COVID-19 vaccines.

10. On this service portal, defendant required its employees to explain their religious beliefs in a text box that limited visibility to only two lines of text.

11. By comparison, the instructions for explaining the requester's religious beliefs contained seven lines of text.

2

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

12. In other words, the online form was designed in such a way as to discourage employees from inputting detailed explanations of their religious beliefs and encourage employees to write as little as possible.

13. In order to submit exemptions using this portal, employees were required to check two boxes as confirmation of twelve different attestations listed by defendant on the portal, including that the employees understand "that a religious exemption that is granted may be revoked, at any time, by SHS in its sole discretion."

14. Plaintiff, along with numerous other employees, were given the option to be placed on unpaid leave on November 15, 2021, to obtain a first dose of a COVID-19 vaccine by November 26, 2021 in order to keep their positions, or simply turn in their badge by November 15, 2021.

15. Plaintiff and numerous other employees were terminated due to their not receiving any of the COVID-19 vaccines based upon their sincerely held religious objections.

**Plaintiff's Sincerely Held**
**Religious Beliefs**

16. Plaintiff has a sincerely held religious belief that precludes him from complying with the mandatory COVID-19 Vaccination Policy because of the connection between all three COVID-19 vaccines (in their origination, production, development, or testing), and the cell lines of aborted fetuses.

3

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

17. A fundamental component of plaintiff's sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

18. These beliefs are rooted in the Bible's teachings that "all Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

19. Plaintiff therefore believes that he must conform his life to the commands and teachings of Scripture, including decisions regarding medical care.

20. Plaintiff further seeks God's will in his life through prayer, which forms the basis of his religious and moral conscience.

21. It is through prayer and reading the Bible that plaintiff receives revelation from the Holy Spirit as he attempts to live out God's will for his life, a sincerely held religious belief also rooted in the Bible's teachings: "[f]or all who are being led by the Spirit of God, these are sons of God." *Romans* 8:14 (KJV), and "[i]f you love me, you will keep my commandments." *John* 14:15.

22. Plaintiff's sincerely held religious beliefs on abortion are rooted in Biblical teachings[1], in that God forms children from the womb, personally knows them prior to their birth, and that therefore all life is sacred from the moment of conception:

    a. "Thou shalt not kill[2]." *Exodus* 20:13 (KJV);

---

[1] See: https://www.gotquestions.org/abortion-Bible.html
[2] *Exodus* 21:22-25 explains that this includes babies inside of the womb.

4

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

b. "Ye have heard that it was said of them of old time, Thou shalt not kill; and whosoever shall kill shall be in danger of the judgment..." *Matthew* 5:21 (KJV);

c. "Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee..." *Jeremiah* 1:5 (KJV);

d. "I was cast upon thee from the womb: thou art my God from my mother's belly." *Psalms* 22:10 (KJV);

e. "For thou has possessed my reins: thou has covered me in my mother's womb. I will praise thee; for I am fearfully and wonderfully made: marvelous are thy works; and that my soul knoweth right well." *Psalm* 139:13-14 (KJV);

f. "Thine eyes did see my substance, yet being unperfect; and in thy book all my members were written, which in continuance were fashioned, when as yet there was none of them." *Psalm* 139:16 (KJV);

g. "The Lord that made thee, and formed thee from the womb..." *Isaiah* 44:2 (KJV);

h. "Thus saith the Lord, thy redeemer, and he that formed thee from the womb, I am the Lord that maketh all things." *Isaiah* 44:24 (KJV);

i. "The Lord hath called me from the womb; from the bowels of my mother hath he made mention of my name." *Isaiah* 49:1 (KJV);

j. "The Lord that formed me from the womb to be his servant." *Isaiah* 49:5 (KJV);

5

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

    k. "Let us make man in our image, after our likeness... So God created man in His own image; in the image of God created He him; male and female created he them." *Genesis* 1:26-17 (KJV);

23. Plaintiff believes, therefore, that taking these precious lives through the practice of abortion is akin to murder of an innocent human expressly forbidden in the Bible. *See, e.g. Exodus* 20:13; ("Though shalt not kill." (KJV)); *Exodus* 21:22-23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 ("the innocent and righteous slay thou not, for I will not justify the wicked." (KJV)); *Genesis* 9:6 ("Whoso sheddeth a man's blood, by man shall his blood be shed: for in the image of God made he man." (KJV)); *Deuteronomy* 27:25 ("Cursed be he that taketh reward to slay an innocent person." (KJV)); *Proverbs* 6:16-17 ("These six things doth the Lord hate: yea, seven are an abomination to him . . . hands that shed innocent blood." (KJV)).

24. Plaintiff's sincerely held religious beliefs, rooted in the Biblical Scriptures above, considers anything that supports, justifies, condones or benefits from the practice of abortion, which takes an innocent life, to be sinful and in complete opposition to the Bible, from which he must abstain and avoid completely.

25. Plaintiff's sincerely held religious belief, rooted in the Scriptures above, is that it is an affront to the Bible's teaching that all life is sacred for him to use a product derived from **or connected in any way to abortion.**

26. Plaintiff's sincerely held religious belief, rooted in the Scriptures above, precludes him from accepting any one of the three currently available COVID-19 vaccines, as all three (Pfizer, Moderna, Johnson & Johnson) were derived from, produced, manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

27. Johnson & Johnson used aborted fetal cell lines to produce and manufacture its vaccines[3].

28. Moderna and Pfizer/BioNTech COVID-19 vaccines also trace their origins to research on aborted fetal cells and are ultimately derived from research and testing on aborted fetal cell lines: "Early in the development of mRNA vaccine technology, fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein." See North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021) as referenced in Footnote 3.

29. Pfizer and Moderna's use of aborted fetal cells in the "proof of concept" phase of their COVID-19 mRNA vaccine development was also confirmed by the Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020):

---

[3] See: https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells, "For the Johnson & Johnson vaccine, fetal cell lines were used in the production and manufacturing stage. To make the Johnson & Johnson vaccine, scientists infect PER.C6 fetal cell lines to grow the adenovirus vector." See also:
https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf, and
https://www.science.org/doi/full/10.1126/science.368.6496.1170

7

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf.

30. In that all three of the subject vaccines are developed and produced from, tested with, researched on, or otherwise connected to aborted fetal cell lines HEK-293 and PER.C6, Plaintiff's sincerely held religious beliefs compel him to abstain from obtaining or injecting any of these products into his body, regardless of the perceived benefit or rationale.

31. While some faith leaders and other adherents whose understanding of Scripture is different, and who may be willing to accept one of the three subject vaccines despite their connection with aborted fetal cell lines, plaintiff's sincerely held religious beliefs compel him to adhere to the truth that the testing, development, production or other connection to aborted fetal cell lines is morally and Scripturally unacceptable and an affront to the Scripture's teachings that God values all human life, and that abortion – in all of its manifestations and with all of its so-called 'benefits' – is a grave sin in which Plaintiff cannot participate.

32. Plaintiff also has a sincerely held religious belief that God is directing him not to take the vaccination based on his God's command, and that to act outside of his faith and God's command would be sin. (Romans 14:23).

33. Plaintiff further sincerely believes that his body belongs to God and is a temple of God's Holy Spirit, (1 Cor. 6:19-20), and that injecting any of the

8

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

ingredients contained within the three available COVID-19 vaccines would

defile his body and dishonor God.

34. Plaintiff's sincerely held beliefs are fundamental to the practice of his

Christian faith.

35. Plaintiff has a sincerely held religious belief that Jesus Christ died on the

cross for his sins, was resurrected three days later, and that when He

ascended into Heaven, He sent the Holy Spirit to indwell His believers and to

guide them in all aspects of their lives. *John* 16:7 ("Nevertheless I tell you the

truth, it is expedient for you that I go away: for if I go not away, the

Comforter will not come unto you; but if I depart, I will send him unto you."

(KJV).; *John* 14:26 ("But the Comforter, which is the Holy Ghost, whom the

Father will send in my name, he shall teach you all things, and bring all

things to your remembrance, whatsoever I have said unto you." (KJV).

36. Plaintiff has a sincerely held religious belief that the Holy Spirit was given to

him by God to reprove him of righteousness and sin and to guide him into all

truth. See *John* 16:8,13 ("And when he is come, he will reprove the world of

sin, and of righteousness, and of judgment . . . when he, the Spirit of truth, is

come, he will guide you into all truth: for he shall not speak of himself; but

whatsoever he shall hear, that shall he speak: and he will shew you things to

come." (KJV).

37. Plaintiff also has a sincerely held religious belief that he shall receive all

answers to his questions through prayer and supplication, including for

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

decisions governing his medical health. See *James* 1:5 ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him." (KJV)); *Mark* 11:24 ("Therefore I say unto you, What things soever ye desire, when ye pray, believe that ye receive them, and ye shall have them." (KJV)); *Philippians* 4:6-7 ("but in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus." (KJV)); *1 John* 4:14-15 ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him." (KJV)).

38. Through much prayer and reflection, Plaintiff has sought wisdom, understanding, and guidance on the proper decision to make concerning these COVID-19 vaccines, and has been convicted by the Holy Spirit in his beliefs that accepting any of the three subject vaccines is against the teachings of Scripture and would be a sin.

39. Plaintiff has a sincerely held religious belief that compels him to follow the teachings of the Holy Spirit, who has not given him peace or comfort to accept any of the three currently available COVID-19 vaccines.

10

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

40. Plaintiff has a sincerely held religious belief that he is being guided and instructed by the Holy Spirit not to accept any of the three subject vaccines and that it would be a sin against God to do so.

41. Plaintiff shared his beliefs with defendant, complying with their policy by providing his beliefs to the best of his ability on defendant's prescribed portal, and has asked defendant for exemption and reasonable accommodation for these beliefs, but defendant has unlawfully refused.

42. Plaintiff can and will comply with all other reasonable alternatives to compliance with COVID-19 Vaccination Policy and to comply with the same alternatives to vaccination that the defendant has provided as accommodations in the past.

**Wrongful Denial of Accommodation**

43. Defendant's October 4, 2021 letter stated, proactively, that religious and medical exemptions would be given only in limited circumstances.

44. Defendant stated in it's October 4, 2021 letter that non-vaccinated individuals are at a higher risk of contracting COVID-19 and unknowingly spreading the virus, and that this would increase community spread and cause staffing shortages.

45. After submitting his request for accommodation, plaintiff received the same boilerplate letter that was sent to nearly every employee who was denied accommodation, stating that the defendant did not make a determination as

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

to the sincerity of plaintiff's beliefs, but that granting his exemption would
pose an undue hardship on Southcoast. (Exhibit B).

46. In the denial letter, it states that "periodic testing, wearing personal
protective equipment, and other actions are not sufficient to stop the spread
of the virus."

47. Defendant offered no appeal from the decision or any meaningful dialogue.

48. Asymptomatic transmission of COVID-19 is highly unlikely. See Madewell, Z.
J., Yang, Y., Longini, I. M., Halloran, M. E. & Dean, N. E. (2020). *Household
transmission of SARS-CoV-2: A systematic review and meta-analysis.* JAMA
NETWORK OPEN, *3*(12), 1-17.
https://doi.org/10.1001/jamanetworkopen.2020.31756; Cao, S., Gan, Y., Wang,
C., Bachmann, M., Wei, S., Gong, J., Huang, Y., Wang, T., Li, L., Lu, K.,
Jiang, H., Gong, Y., Xu, H., Shen, X., Tian, Q., Lv, C., Song, F., Yin, X. & Lu,
Z. (2020). *Post-lockdown SARS-CoV-2 nucleic acid screening in nearly ten
million residents of Wuhan, China.* NATURE COMMUNICATIONS, *11*(1),
5917. https://doi.org/10.1038/s41467-020-19802-w; Buitrago-Garcia, D., Egli-
Gany, D., Counotte, M. J., Hossmann, S., Imeri, H., Ipekci, A. M., Salanti, G.
& Low, N. (2020). *Occurrence and transmission potential of asymptomatic
and presymptomatic SARS-CoV-2 infections: A living systematic review and
meta-analysis.* PLOS MEDICINE, *17*(9), e1003346.
https://doi.org/10.1371/journal.pmed.1003346; Cevik, M., Tate, M., Lloyd, O.,
Maraolo, A. E., Schafers, J. & Ho, A. (2021). *SARS-CoV-2, SARS-CoV, and*

*MERS-CoV viral load dynamics, duration of viral shedding, and infectiousness: A systematic review and meta-analysis.* THE LANCET, MICROBE, *2*(1), e13-e22. https://doi.org/10.1016/s2666-5247(20)30172-5; Peirlinck, M., Linka, K., Costabal, F. S., Bhattacharya, J., Bendavid, E., Ioannidis, J. P. A. & Kuhl, E. (2020). *Visualizing the invisible: The effect of asymptotic transmission on the outbreak dynamics of COVID-19.* COMPUTER METHODS IN APPLIED MECHANICS AND ENGINEERING, *372*(1), 113140. https://doi.org/10.1016/j.cma.2020.113410.

49. Plaintiff's presence at the workplace unvaccinated while wearing a facemask, checking his temperature, monitoring for symptoms, physically distancing from patients and employees when possible not pose a "direct threat" at his place of work. *See*: Baker, M., Rhee, C., Fiumara, K., Bennett-Rizzo, C., Tucker, R., Williams, S., . . . Klompas, M. (2020). COVID-19 infections among HCWs exposed to a patient with a delayed diagnosis of COVID-19. *Infection Control & Hospital Epidemiology, 41*(9), 1075-1076. https://doi:10.1017/ice.2020.256 (low infection rate amongst healthcare workers exposed to COVID-19 infected patients); Meghan A Baker, Karen Fiumara, Chanu Rhee, Sarah A Williams, Robert Tucker, Paige Wickner, Andrew Resnick, Michael Klompas, CDC Prevention Epicenters Program, Low Risk of Coronavirus Disease 2019 (COVID-19) Among Patients Exposed to Infected Healthcare Workers, *Clinical Infectious Diseases*, Volume 73, Issue 7, 1 October 2021, Pages e1878–e1880,

13

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

https://doi.org/10.1093/cid/ciaa1269 (low infection rate amongst healthcare

workers exposed to COVID-positive patients); Cavanaugh AM, Spicer KB,

Thoroughman D, Glick C, Winter K. *Reduced Risk of Reinfection with SARS-*

*CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021.* MMWR

MORB MORTAL WKLY REP 2021;70:1081-1083.

https://doi.org/10.15585/mmwr.mm7032e1 (vaccinated racetrack worker

study showing that vaccinated workers were over two times **more likely** to

be reinfected than unvaccinated workers); Vitale, J., Mumoli, N., Clerici, P.,

de Paschale, M., Evangelista, I., Cei, M. & Mazzone, A. (2021). *Assessment of*

*SARS-CoV-2 reinfection 1 year after primary infection in a population in*

*Lombardy, Italy.* JAMA INTERNAL MEDICINE, *181*(10), 1407-1409.

https://doi.org/10.1001/jamainternmed.2021.2959 (reinfection is incredibly

rare); Elijah, S (2022) *On What Basis Did Pfizer Claim 95%,*

https://brownstone.org/articles/on-what-basis-did-pfizer-claim-95/ (Analysis of

publicly-released Pfizer trial data shows **an actual effectiveness of 12%**,

compared to Pfizer's claim of 95%).

50. As the science has progressed on the study of COVID-19, studies have shown

that there is a very small statistical difference between vaccinated and

unvaccinated individuals when it comes to transmission of the virus. *See*

Gunter, Kampf, (November 19, 2021), *The Epidemiological Relevance of the*

*COVID-19-Vaccinated population is increasing.*

https://doi.org/10.1016/j.lanepe.2021.100272 (39% of infected are fully

vaccinated); Brown CM, Vostok J, Johnson H, et al. *Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings* — Barnstable County, Massachusetts, July 2021. MMWR Morb. Mortal Wkly. Rep 2021;70:1059-1062. https://www.publichealthontario.ca/-/media/documents/ncov/research/2021/08/synopsis-brown-mmwr-breakthrough-infections-large-public-gatherings.pdf?sc_lang=en&hash=5F574064D4A73D8F3317281A26E6E6BE **(Roughly 3/4 of all infected from outbreak of 469 cases were vaccinated)**

51. Plaintiff's mask and thermometer are items that he could simply purchase himself for less than $20, therefore his accommodation would not pose a financial hardship to the defendant.

52. Massachusetts currently has approximately 5,000 vacancies for nurses at hospitals within the Commonwealth[4].

53. Thus, even if plaintiff or any other employee in his position were to have to quarantine, the loss of staffing for the quarantine period would still prove less than perpetual vacancies due to not allowing vaccinated employees to work at defendant's hospitals.

### CLASS ALLEGATIONS

54. Plaintiff brings this action under Mass. R. Civ. P. 23.

---

[4] https://www.statnews.com/2022/07/13/nursing-shortage-massachusetts-hospitals-multimillion-dollar-costs/ (dated July 13, 2022).

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

55. Through this action, plaintiff seeks to represent a class of all Southcoast employees who have requested or will request religious exemptions and accommodations from its mandatory COVID-19 vaccination policy and who have had those requests unlawfully denied (expressly or constructively).

56. The class is so numerous that joinder of all members is impractical. While the class size is currently 43 employees (all who have obtained a right to sue from the EEOC), defendant's website indicates that Southcoast employs over 7,500 people[5]. The precise number and identification of the class members will be ascertainable from Southcoast's records during discovery.

57. There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

    a. Did Southcoast comply with federal and state law when it denied religious accommodation requests across the board?

    b. Did Southcoast comply with federal and state law when it informed plaintiff and other employees that it would be an undue hardship to let them keep their current positions, regardless of any alternative safety measures that these employees were willing to abide by, and that other healthcare employers within the Commonwealth and throughout the country allow their employees to abide by?

---

[5] https://www.southcoast.org/careers/

16

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

   c.  Did Southcoast violate federal and state law by granting exemption requests and providing reasonable accommodations to other employees while denying plaintiff and other employees their similar requests?

   d.  Did Southcoast comply with its Title VII obligation to engage in the interactive process when responding to each of its exemption requests?

   e.  Did Southcoast violate federal and state law in creating a policy that only provided accommodation in limited circumstances that could be revoked in its sole discretion?

58. Plaintiff's claims are typical of the claims of the class because he, like the class members, requested exemption and accommodation from the COVID-19 vaccination policy and Southcoast denied those requests.

59. For the same reason, plaintiff will fairly and adequately protect the interests of the class.

60. The question of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating plaintiffs' claims. Joinder of all members is impracticable.

## COUNT I
### (Title VII Violation)
### 42 U.S.C. § 2000e, *et seq.*

61. Plaintiff realleges and adopts each and every allegation in paragraphs 1-60 as if fully set forth herein.

62. Title VII of the Civil Rights Act prohibits Defendant from discriminating against its employees on the basis of their sincerely held religious beliefs.

63. Plaintiff holds a sincere religious belief that precludes him from receiving a COVID-19 vaccine.

64. Plaintiff informed Defendant of those beliefs and requested a religious exemption and reasonable accommodation from the vaccine policy.

65. Defendant failed to engage in a meaningful interactive process with Plaintiff regarding his religious accommodation request.

66. Irrespective of the interactive process, Defendant failed to provide Plaintiff with a religious exemption and reasonable accommodation, thereby discriminating against Plaintiff because of his religious beliefs.

67. Defendant's failure to provide religious exemption and accommodation to Plaintiff has caused him harm.

68. Once an employee demonstrates that their religious belief conflicts with an employment condition, "the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship. *Cloutier* v. *Costco Wholesale Corp.,* 390 F.3d 126, 133 (1st Cir. 2004).

69. Defendants did not demonstrate that accommodating Plaintiff's religious beliefs would have resulted in undue hardship.

70. By failing to engage in a meaningful interactive process, offer any reasonable accommodation, or demonstrate an undue hardship, Defendant's

discriminatory actions were intentional and/or reckless and in violation of

Title VII.

Wherefore, Plaintiff requests relief against Defendant as set forth in his prayer for

relief.

## COUNT II
### (Religious Discrimination)
### M.G.L. c. 151B

71. Plaintiff realleges and adopts each and every allegation in paragraphs 1-70 as if fully set forth herein.

72. G.L. c. 151B §4 prohibits Defendant from discriminating against their employees on the basis of their sincerely held religious beliefs.

73. Plaintiff holds a sincere religious belief that precludes him from receiving a COVID-19 vaccine.

74. Plaintiff informed Defendants of those beliefs and requested a religious exemption and reasonable accommodation from the vaccine policy.

75. Defendants failed to engage in a meaningful interactive process with Plaintiff regarding his religious accommodation request.

76. Irrespective of the interactive process, Defendants failed to provide Plaintiff with a religious exemption and reasonable accommodation, thereby discriminating against Plaintiff because of his religious beliefs.

77. Defendants' failure to provide religious exemption and accommodation to Plaintiff has caused Plaintiff harm.

78. By failing to engage in a meaningful interactive process, offer any reasonable accommodation, or demonstrate an undue hardship, Defendant's discriminatory actions were intentional and/or reckless and in violation of G.L. c. 151B.

Wherefore, Plaintiff requests relief against Defendant as set forth in his prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

79. Certify this action as a class action under Mass. R. Civ. P. 23.

80. Award money damages, punitive damages, costs and attorney fees to plaintiff and others similarly situated to be proven at trial.

81. Award any other relief this Court deems equitable and just.

**Plaintiff, individually and on behalf of all others similarly situated, demands a trial by jury.**

Plaintiff, by his attorney,

_/s/ Ryan P. McLane_____
Ryan P. McLane, Esq. (BBO: 697464)
McLane & McLane, LLC
269 South Westfield Street
Feeding Hills, MA 01030
Ph. (413) 789-7771
Fax (413) 789-7731
E-mail: ryan@mclanelaw.com

Dated: July 18, 2022

20

Date Filed 7/18/2022 11:38 PM
Superior Court - Bristol
Docket Number

#1

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2273CV0496 A | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| | | COUNTY  Bristol Superior Court (Fall River) |

| Plaintiff   Jonathan Souza | Defendant:   Southcoast Health System, Inc |
|---|---|
| ADDRESS:   524 Freelove St | ADDRESS:   101 Page Street |
| Fall River, MA 02720 | New Bedford, MA 02740 |

|  | BRISTOL, SS SUPERIOR COURT |
|---|---|
| Plaintiff Attorney:   Ryan P. McLane | Defendant Attorney: FILED |
| ADDRESS:   McLane & McLane, LLC | ADDRESS: |
| 269 South Westfield Street | JUL 1 8 2022 |
| Feeding Hills, MA 01030 | |
| BBO:   697484 | BBO: |

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| | | | ☐ YES   ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?   ☐ YES   ☒ NO          Is there a class action under Mass. R. Civ. P. 23?   ☒ YES   ☐ NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, §3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date

   1. Total hospital expenses  _____

   2. Total doctor expenses  _____

   3. Total chiropractic expenses  _____

   4. Total physical therapy expenses  _____

   5. Total other expenses (describe below)  _____

                                       Subtotal (1-5):   $0.00

B. Documented lost wages and compensation to date  $50,000.00

C. Documented property damages to date  _____

D. Reasonably anticipated future medical and hospital expenses  _____

E. Reasonably anticipated lost wages  _____

F. Other documented items of damages (describe below)  _____

Damages under Title VII and G.L. c 151B, individually and on behalf of class = $50k+

                                           TOTAL (A-F):   $50,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

Religious Discrimination under Title VII and G.L. c. 151B

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Unrepresented Plaintiff: X   /s/ Ryan P. McLane          Date:   July 18, 2022

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney/Unrepresented Plaintiff: X   /s/ Ryan P. McLane          Date:   July 18, 2022

SC0001: 1/22/2021          www.mass.gov/courts          Date/Time Printed:07-18-2022 23:34:10

# EXHIBIT A

 Southcoast® Health

October 4, 2021

Dear Southcoast Colleagues,

This communication contains important updates regarding our COVID-19 and flu vaccine mandates.

**Monday, November 15 is the date by which all Southcoast employees must be fully vaccinated. In the next few weeks, we will notify employees of the deadline date for the mandatory flu shot.**

**Employees not fully vaccinated for COVID-19 by November 15 or who have not received an approved medical or religious exemption (which will be given only in limited circumstances) will be involuntarily terminated for failure to comply with this important Southcoast Health policy.**

In mid-July, we announced that Southcoast would establish a mandatory COVID-19 vaccine requirement for all staff. Since that time, we have worked collaboratively to educate and inform all individuals who may have questions or concerns.

As the premier health care system in the region and a not-for-profit, mission-driven health system, Southcoast must ensure the availability of community health care in a safe environment. Without a fully vaccinated staff, we risk compromising the availability and the safety of our services.

As we know from recent data, non-vaccinated individuals are at higher risk of contracting COVID-19 and unknowingly spreading the virus. Without a fully vaccinated staff, we increase the risk of community spread. Increased infection rates WILL burden our frontline, resulting in staff shortages, fading confidence in our services, and people being discouraged from seeking critical care. It is irresponsible and unethical to continue operations without a fully vaccinated staff. It puts our community, colleagues, and loved ones at risk.

Additionally, Southcoast Health is morally obligated to set an example for the public and others to follow. Our responsibility is to instill confidence in vaccine science and facts and encourage our entire community to make sound decisions and seek vaccination. The outcome of COVID-19 vaccination is universal. Every member of the Southcoast community has a role in curbing infection rates and overcoming the pandemic.

Most importantly, this decision regarding vaccination is not ours alone. The federal government is requiring hospitals and other Medicare and Medicaid providers to vaccinate their workforce in order to protect patients. This requirement applies to Southcoast Health, and we are obligated to comply with and uphold the vaccination standard set for all health care providers across the country. Our approach is also consistent with the approach of many other hospitals within and outside Massachusetts

As Southcoast colleagues, we have come together these past 19 months – all of us – as a workplace community to support one another and provide the best care possible to patients. You have done an outstanding job and have shown tremendous strength and perseverance in the face of adversity. We are grateful for your efforts and contributions to the health and wellbeing of our community. Therefore, we ask for continued participation in the health of the South Coast community. Please get vaccinated, if not for yourself, then for your colleagues, loved ones, and patients.

While we continue to outreach to those who have informed us they do not plan on receiving the vaccine, we will continue to take proactive steps to ensure the future health and safety of our patients and colleagues.

To that end, I am sharing with you a few important updates:

- Termination of employment for non-compliance with the vaccination policy will be considered involuntary. **This means that employees would not be eligible for severance benefits and would generally be disqualified from receiving unemployment benefits**.

- We have enacted a new vaccine mandate policy effective October 4, 2021 that includes details of the religious and medical exemption request process. Click **Seasonal Influenza and COVID 19 Mandatory Vaccination Policy** for more information.

- Employees who wish to upload proof of COVID-19 vaccination should use the Employee Health COVID Vaccine Verification Request portal located on the Southcoast Health intranet.

- Employees requesting a medical, temporary medical deferral or religious exemption must submit their request online using the Employee Health COVID Vaccine Exemption Request portal (see quick links) located on the Southcoast Health intranet. Exemption requests will not be accepted unless the employee uses the online exemption request portal. Employees submitting an exemption request should have all of their supporting documentation (if applicable) ready to be uploaded when they complete the online exemption request process.

Please understand that we hope all employees will comply with the mandatory vaccination policy listed above as termination of employment is not the outcome we wish for any of our valued staff.

For those who are still undecided about vaccination, we encourage you to take advantage of the factual education and information that is available. We recognize the decision to vaccinate may be difficult for some, but the health and safety of our patients and colleagues must always remain our top priority.

Respectfully,

Lauren A. De Simon Johnson
Sr. Vice President, Chief Human Resources Officer

Date Filed 7/18/2022 11:36 PM
Superior Court - Bristol
Docket Number

# EXHIBIT B



## Southcoast® Health

More than medicine.

__Memorandum__

**To:**    Jonathan Souza

**From:**  Kristen Wood
          Director, Employee and Labor Relations

**Cc:**    Holly Marcello

       Victoria DelPonte
       HR Business Partner

**Date:**  November 3, 2021

**Re:**    Your Request for a Religious Exemption to the COVID-19 Vaccination Mandate

We received your request for a religious exemption from Southcoast's mandatory COVID-19 vaccination policy.

**This is to inform you that, based on our review of your exemption request, including any supporting materials, your request for a religious exemption from the vaccine mandate has been denied.**

Under applicable law, religious exemptions to mandatory vaccination policies may be approved where the employee provides satisfactory evidence showing that the employee's sincerely held religious belief conflicts with the vaccination policy and the exemption does not pose an undue hardship for the employer.

We have made no determination regarding the sincerity of your religious beliefs; however, we have determined that granting you an exemption poses an undue hardship on Southcoast. In your role, you are required, or may be called upon, to care for or interact with Southcoast employees, vulnerable and/or high-risk patients, and/or community members, many of whom have expressed concerns about coming into contact with unvaccinated individuals. The COVID-19 vaccines have proven effective in reducing the spread of the virus and protecting Southcoast employees, patients, and community members. Periodic testing, wearing personal protective equipment, and other actions are not sufficient to stop the spread of the virus. The positivity rates for the Delta variant, and other new variants, are increasing. Based on the available data, there is a real risk of harm from granting you an exemption.

There is no appeal of this final decision of your submitted Religious Exemption Request. Neither Human Resources nor your manager can adjust your denied status now that this final determination has been made.

As a reminder, failure to become fully vaccinated by November 15th will result in corrective action up to and including termination of your employment for non-compliance with Southcoast's mandatory COVID-19 vaccination policy. Once you do become vaccinated, you can upload proof of vaccination to Employee Health using this link: www.southcoast.org/covidverify.

You are reminded that this denial is for the 2021 season and should not be construed as a denial for any future vaccination season or future vaccine mandate. If you have any questions about this communication or the vaccine mandate, please contact your manager. If you have any questions, please contact your manager.

# Exhibit B

## COMMONWEALTH OF MASSACHUSETTS

**BRISTOL, SS.**                                              **SUPERIOR COURT**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JONATHAN SOUZA,
on his own behalf and on behalf of all others
similarly situated,

                          Plaintiff,

                         -v-

SOUTHCOAST HEALTH SYSTEM, INC.,

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Civil Action No.  2273CV00496A

## NOTICE OF FILING OF NOTICE OF REMOVAL

To:    Bristol County Superior Court
       9 Court St.
       Taunton, MA 02780

      PLEASE TAKE NOTICE that a Notice of Removal in the above action from the Bristol

County Superior Court has been duly filed in the United States District Court for the District of

Massachusetts.  Attached hereto is a copy of that Notice of Removal.

                                Respectfully submitted,

                                Defendant
                                SOUTHCOAST HEALTH SYSTEM, INC.

                                By their attorneys,

                                */s/ Sarah B. Herlihy*
                                Sarah B. Herlihy (BBO #640531)
                                Jeanette M. Martinez Figueroa (BBO #707465)
                                JACKSON LEWIS P.C.
                                75 Park Plaza, 4th Floor
                                Boston, MA  02116
                                T: 617-367-0025; F: 617-367-2155
                                sarah.herlihy@jacksonlewis.com
                                jeanette.martinezfigueroa@jacksonlewis.com

Dated: September 12, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of September, 2022, a copy of the foregoing document was served upon Plaintiff's counsel of record, Ryan P. McLane, McLane & McLane, LLC, 269 South Westfield St. Feeding Hills, MA 01030 via electronic mail ryan@mclanelaw.com.

*/s/ Sarah B. Herlihy*
Jackson Lewis P.C.


4864-4920-4273, v. 1